## KUHN v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILROAD COMPANY.

74 137
90 330

**Railroads** : EJECTMENT OF PASSENGER : DAMAGES : EXEMPLARY WITHOUT ACTUAL. Plaintiff sued for damages to his health, through exposure, in being wrongfully ejected from defendant's train before he had reached the destination to which he had paid his fare. The court instructed the jury that he was not entitled to any damages, under the evidence, unless it was for the value of transportation from where he was ejected to his destination, and that, if they found him entitled to any damages on that ground, they might also give him exemplary damages in case they found that he had been ejected maliciously. But no damages for such transportation were claimed or proved by plaintiff, and it appeared that the fare to the two points was the same. *Held* that the instruction was erroneous in submitting a point that was not in issue, and that as, under the instruction, no other actual damages could lawfully be found, it was error to authorize the jury to find exemplary damages, since such damages can never be allowed in the absence of actual damages. (See cases cited in opinion.)

### *Appeal from Carroll District Court.*

### FILED, MARCH 9, 1888.

THIS is an action at law by which the plaintiff seeks to recover damages of the defendant upon the ground that a conductor on one of its trains, upon which plaintiff was a passenger, wrongfully, maliciously and forcibly ejected the plaintiff from said train. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*Wright, Baldwin & Haldane*, for appellant.

*Scott & Scott*, for appellee.

ROTHROCK, J.—The plaintiff and one King were at Coon Rapids on the line of defendant's railroad on the thirteenth day of February, 1883. They desired to travel on the road to Manning, a station some distance

west of Coon Rapids. They made application to the
ticket-agent at Coon Rapids for tickets to Manning. The
agent sold them tickets to another station called War-
wick, which is a short distance east of Manning, and
stated to them that the tickets were good for passage to
Manning. The fact that the tickets were good for pass-
age to Manning is conceded by the defendant, and plain-
tiff claims that he told the conductor when he took up
his ticket that he wanted to go to Manning. The train
arrived at Warwick after dark. The plaintiff claims,
and he and King testified on the trial, that, as the train
approached Warwick, the conductor called the name of
the station, and commanded the plaintiff and King to
leave the train; that they refused and tried to explain,
and claimed that their tickets were good to Manning;
but that the conductor, with loud and profane language,
stated to them if they did not leave the train he would
put them off, and advanced towards them in a threaten-
ing manner as if to execute his threat; whereupon they
left the train. It is claimed that there was a deep snow
and no traveled road between Warwick and Manning, and
no house at Warwick where plaintiff could stay; that
he was compelled to travel through the snow and water
to Manning in a rain, by which exposure he caught a
severe cold, and was sick for a week. The person who
was conductor of the train was sworn as a witness, and
in his testimony he stated that he knew the tickets were
good for passage to Manning, and that he stated to the
plaintiff that, as Warwick was but a flag station, he had
better leave the train at Manning, but that plaintiff and
his companion demanded their right to be allowed to
leave the train at Warwick; and that he accordingly
stopped at that station, where they got off, without
objection or protest; and that he used no profane, loud
or boisterous language towards them whatever.

It will be seen from the foregoing statement that the
evidence was sufficient to authorize the jury to find
that the plaintiff was wrongfully compelled to leave the
train before the contract of carriage was completed, and
that he was entitled to damages in some amount. The

court instructed the jury, on the question of damages, as follows :

"There is no evidence from which any assessment of actual damages can be made in this case, beyond the value of the transportation from Warwick to Manning, which would be but a few cents, so that upon this point there is no room practically for the assessment of any actual damages beyond the value of the transportation between those two points. The most important question on this point is whether or not anything ought to be added by way of exemplary damages. If you conclude, from the evidence, that the plaintiff was wrongfully compelled to leave the train at Warwick, and it is further shown that the conductor acted maliciously in so wrongfully compelling him to leave it there, exemplary damages may be awarded as a punishment for the wrongful act. If it is shown that the conductor, in ordering plaintiff to leave the train at Warwick, if he did so, was actuated by a desire to injure, harass or annoy the plaintiff ; or if his acts and manner of conduct and language were such as indicated a wanton recklessness of the rights of the plaintiff, or were unreasonably abusive and humiliating to the plaintiff, exemplary damages may be awarded. But if the evidence shows that plaintiff, or he and his companion, refused or neglected to inform the conductor, when asked, at which station he desired to stop, and by their conduct led the conductor to stop the train at Warwick on purpose to allow him to get off there, or if plaintiff's conduct was such as to invite any altercation or angry words, the plaintiff will not be entitled to any exemplary damages. No exemplary damages can be awarded unless a cause of action and some actual damages, as before explained, are first shown, and even then you are not bound to add anything for exemplary damages, although you may do so, if it is shown that the act of the conductor was malicious or wanton, as before stated ; and the amount thereof, if any are assessed, is of necessity left to your sound discretion, and should be assessed, if at all, in view of all the circumstances in this particular case."

The defendant claims that the first paragraph of this part of the charge is erroneous, because the plaintiff made no such claim in his petition, and there was no evidence in the case from which the jury could estimate the actual damages to which the court limited the recovery. The instruction states that it would be but a few cents. There was no direct evidence of the cost of a ticket from Warwick to Manning, and, indeed, there is no evidence that tickets were sold from one station to the other. The distance between the two stations is one mile and a quarter, as shown by the evidence. It may be that the jury could have made an estimate of the fare for that distance. But the evidence shows, without conflict, that the cost of a ticket from Coon Rapids to Manning was the same as it was to Warwick, and the plaintiff made no claim in his petition to recover the fare he had paid for the distance the defendant failed to carry him. It is manifest that the court intended to instruct the jury that the actual damage was merely nominal. It was the duty of the jury to obey that instruction. They could not lawfully find that the plaintiff was entitled to actual damages for the exposure and inconvenience in wading through snow and water in a rain, and the consequent sickness; and, as the plaintiff did not except to the instruction, and appeal, we are required to treat it as the law of the case, in so far as it practically excluded all but nominal damages, whatever the true rule of law upon the proven facts may be. It must not be understood that we hold that, because under the instruction the plaintiff was practically held to be entitled to only nominal damages, he could not recover in any amount. Whenever there is an invasion of a legal right, the law infers some damage to the plaintiff, and when no amount is proved, the recovery is nominal, being some very small sum. In the view taken of the plaintiff's right of recovery, the court was not warranted, either from the issues or evidence, to direct the jury to find for the plaintiff in the amount of his unearned passage money; and, as every other element of actual damage was eliminated from the

case, the conclusion must be that the jury were only warranted in considering nominal damages, in determining the question of actual compensation for the injury.

II. In view of what has been said of the paragraph of the charge we have been considering, that part of the instruction which authorizes the jury to award exemplary damages cannot be sustained. It is well settled that, where the damage to the plaintiff is merely nominal, that is, where a right is invaded, and there is no evidence of actual damage, there is no foundation upon which exemplary damages can attach or rest. *Stacy v. Portland Publishing Co.*, 68 Me. 279; *Freese v. Tripp*, 70 Ill. 496; *Meidel v. Anthis*, 71 Ill. 241; *Ganssly v. Perkins*, 30 Mich. 492; *Maxwell v. Kennedy*, 50 Wis. 645. The court having practically taken away from the jury all evidence of actual damages, it was error to authorize them to enter into consideration of the question of exemplary damages.

REVERSED.